IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM LIEBAU,

        Plaintiff,

v.                                                                                          CIVIL ACTION NO.   2:24-cv-00587

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION,
and LT. TIMOTHY TIBBS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 11), the *Memorandum of Law in Support of West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 12), the *Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 16), and the Defendant's *Reply to Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 17), as well as the *Complaint* (Document 1-1).  For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, William Liebau, initiated this action with a complaint filed against Defendants West Virginia Division of Corrections and Rehabilitation (WVDCR) and Lt. Timothy Tibbs on or about July 16, 2024.  Mr. Liebau was incarcerated at the North Central Regional Jail

(NCRJ) during the events at issue. WVDCR is responsible for overseeing jails in West Virginia. Lt. Tibbs was employed as a correctional officer at NCRJ.

A correctional officer sprayed another inmate in Mr. Liebau's section, and that inmate was removed from the section. The correctional officer then asked who in the section wanted their door open. Mr. Liebau, believing that the intent was to offer inmates fresh air following use of the OC spray, answered in the affirmative. He was taken to a non-contact visitation room. Defendant Tibbs approached, opened the door, and sprayed him with OC spray, then cuffed him and took him to a temporary holding cell without properly decontaminating him. Mr. Liebau was causing no disturbance and had refused no orders when Lt. Tibbs sprayed him without warning. He suffered burning eyes, shortness of breath, and burning skin, as well as mental anguish, embarrassment, and humiliation.

Lt. Tibbs filed a false incident report, which caused Mr. Liebau to be placed in the hole. Mr. Liebau was also threatened that he would be beaten if he filed paperwork or grievances related to the incident. Lt. Tibbs "has been involved in using excessive force, most commonly through the use of OC spray, against at least dozens of inmates while he was a correctional officer at NCRJ." (Compl. at ¶ 10.)

The Complaint contains the following counts: Count 1 – Outrageous Conduct; Count II – Violation of 42 U.S.C. § 1983; and Count 3 – Vicarious Liability.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521

F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

3

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendant WVDCR argues that the sole claim against it, for vicarious liability, is not a stand-alone claim and is not supported by either of the claims against Lt. Tibbs. WVDCR contends, and the Plaintiff concedes, that vicarious liability is not available for claims pursuant to 42 U.S.C. §1983. The Defendant concedes that use of OC spray against a compliant inmate who poses no threat, as alleged, is a violation of clearly established law. However, it contends that it cannot be vicariously liable for the tort of outrage claim asserted against Lt. Tibbs because it involves intentional conduct outside the scope of employment. In addition, WVDCR argues that it is entitled to qualified immunity under West Virginia law because Lt. Tibbs' alleged actions were outside the scope of his employment.

The Plaintiff contends that WVDCR is vicariously liable for Lt. Tibbs' state tort alleged in Count One. He argues that he has sufficiently alleged facts that would support a finding that the

4

conduct was within the scope of employment. He relies on a recent decision by the West Virginia Supreme Court of Appeals, *Crawford v. McDonald*, 21-0732 (W. Va. Mar. 31, 2023), which also involved the use of OC spray against an inmate. He asserts that he has properly plead that Lt. Tibbs' conduct was within the scope of his authority and for the benefit of WVDCR as his employer, and whether that conduct was within the scope of employment should be left to a jury. In addition, he argues that WVDCR is not entitled to qualified immunity because the conduct was within the scope of employment, but clearly unlawful based on precedent regarding unnecessary use of OC spray.

The West Virginia Supreme Court of Appeals has outlined the test for state agency immunity from vicarious liability for the acts or omissions of its agents and employees as follows:

> If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

Syl. Pt. 12, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014). The court explained that acts "manifestly outside of the scope of [an employee's] authority or employment" are "notable for being driven by personal motives which in no way benefit the

5

State or the public, nor is it reasonably incident to the official or agent's duties." *Id.* at 765. However, "situations wherein State actors violate clearly established rights while acting within the scope of their authority and/or employment, are reasonably borne by the State." *Id.* The West Virginia Supreme Court has adopted the Restatement factors for determining whether conduct is within the scope of employment: "if the conduct is (1) of the kind he is employed to perform; (2) occurs within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master, and (4) if force is used, the use of force is not unexpectable by the master." *W. Virginia Div. of Corr. & Rehab. v. Robbins*, 889 S.E.2d 88, 103 (W. Va. 2023) (emphasis omitted). "The 'purpose' of the act is of critical importance." *Id.* "Whether an act falls within the scope of employment generally presents a question of fact," unless "the facts are undisputed and no conflicting inferences are possible." *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675, at *7 (W. Va. Mar. 31, 2023). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (quoting *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d at 769).

The Defendant emphasizes this Court's previous opinion in a factually similar case finding that "the retaliatory use of OC spray could in no way serve the purposes of the WVDOC," and was therefore outside the scope of employment. *Marcum v. Bailey*, No. 2:20-CV-00628, 2020 WL 7646977, at *5 (S.D.W. Va. Dec. 23, 2020) (Berger, J.). The Plaintiff emphasizes the West Virginia Supreme Court's reasoning in *Crawford*, finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where

6

the Plaintiff alleged unjustified use of OC spray, failure to decontaminate, and extended use of restraints.  *Crawford*, 2023 WL 2729675, at *7.

Mr. Liebau has alleged that Lt. Tibbs sprayed him with OC spray, despite his compliance with all directives, when he asked for his cell door to be opened after another correctional officer had sprayed another inmate.  He asserts that the other officer, while taking him to the non-contact visitation room, told him that he was not tough and was all talk, and that he heard Lt. Tibbs ask if he was at the right door before deploying the spray.  Those factual allegations indicate that Mr. Liebau was sprayed in retaliation for asking for his door to be opened.  No conflicting inference can be drawn from these facts.

On appeal of denial of summary judgment, the West Virginia Supreme Court in *Crawford* found that a reasonable jury could find excessive force and could find that the subject officer was acting withing the scope of his employment based on the disputed facts presented in that case. In contrast to *Crawford*, where there was evidence that the plaintiff was on drugs, refused directives from officers, and could have been viewed as a security risk, Mr. Liebau alleges that he "…was not a threat to himself, the Defendant, or anyone else at the time he was sprayed…was not causing any disturbance…never refused any orders…" and was sprayed by Defendant Tibbs without any warning.  The Plaintiff further alleges that Defendant Tibbs "attempted to cover up his wrongful conduct by filing a false incident report" and that he "was also threatened that if he attempted to file any paperwork or grievances related to this incident that the correctional officers would beat him." (Compl. at ¶ 8 and 9)

Assuming the allegations to be true, no reasonable inference can be drawn that Defendant Tibbs' intentional wrongful conduct was done for the benefit of his employer.  Although the

conduct occurred at the time and place of employment, the factual allegations are devoid of any possible basis for Lt. Tibbs to believe that spraying Mr. Liebau with OC spray would further the interests of the WVDCR. Based on these allegations, Defendant Tibbs engaged in intentional conduct outside the scope of his employment. Therefore, the Defendant's motion to dismiss the WVDCR must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 11) be **GRANTED** and that Defendant West Virginia Division of Corrections and Rehabilitation be **DISMISSED** from this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 14, 2025

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA